## ELIJAH C. PEARL *against* JEDUTHAN RAWDIN.

A person was arrested by process authorised by the statute concerning *Bastardy,* and upon his refusal to give bond for his appearance before the county court, to answer to the complaint, a *mittimus* was granted for his commitment; while in custody, upon the *mittimus,* and on his way to prison, he forcibly, and against the will of the officer, made his escape, and fled into an adjoining state. While the prisoner was thus in custody, the complainant directed the officer to effect a settle-

MOTION for a new trial.

This was an action on the case. The declaration stated, that the defendant was arrested by the plaintiff, as an indifferent person, by virtue of a warrant issued on complaint of one *Lucy Humphrey,* upon the statute concerning *bastards* and *bastardy;* that the defendant was brought before a magistrate, and ordered to give bonds for his appearance before the County Court, &c.; that he neglected to give bonds, and thereupon, the magistrate granted a *mittimus,* directing the plaintiff, as indifferent person, to commit him to prison; that by virtue of the *mittimus,* the plaintiff took the defendant into custody, and on the way to the prison, he, with the assistance of sundry persons, contrary to the will of the plaintiff, escaped, and fled into the state of *New-York,* at a distance of more than 200 miles; that the plaintiff pursued the defendant into the state of *New-York,* retook, and committed him to prison; that he was put to great cost, trouble and expense in pursuing, retaking and conveying the defendant to prison, to his damage 200 dollars, &c.

Issue was joined to the court, on the plea of *not guilty.* The Superior Court found the issue for the plaintiff, with 90 dollars damages. Whereupon the defendant moved for a new trial, for the following reasons: In the first place, the plaintiff, on the trial, claimed damages for his services and expenses, in pursuing and retaking the defendant, in the state

ment of her claim, and authorised him to accept a certain sum in satisfaction; the prisoner offered to pay the sum proposed, but the officer refused to receive the money, and demanded a greater sum: Held, that the officer might lawfully pursue and retake the prisoner, in such foreign jurisdiction.

Held, also, that the prisoner was not discharged from his liability to be held in custody, by the proposition for a settlement.

Held, also, that on an adjustment of the claim of the complainant, the officer had a right to demand his fees, in addition, and to hold the prisoner until such fees should be paid.

If a prisoner, being in legal custody, on arrest, shall, by force, or otherwise, against the will of the officer, escape and flee into a foreign jurisdiction, and on pursuit, be retaken by the officer, he is liable to him in damages, for the trouble and expenses of such pursuit and recaption.

The insufficiency of the declaration is not a valid ground for a motion for a new trial; it can be taken advantage of only by writ of error.

of *New-York*, and offered evidence in support of such claim, to the admission of which, the defendant objected ; but the court overruled the objection, admitted the evidence, and allowed such claim.

2. That it was proved on the trial, that while the plaintiff held the defendant in custody, by virtue of the *mittimus*, and before the escape, *Lucy Humphrey* directed the plaintiff to effect a settlement of her claim against the defendant, and authorised him to accept 80 dollars in satisfaction thereof ; that the defendant offered to pay the plaintiff 80 dollars on account of such claim, but that he refused to receive the money, and demanded of him 100 dollars.

3. That the court rendered judgment for the plaintiff, whereas, judgment ought to have been rendered for the defendant ; because the plaintiff's declaration and matters therein alleged, were insufficient.

The questions of law arising upon this motion, were reserved for the consideration of the nine Judges.

*J. T. Peters*, in support of the motion. He commenced his argument by a statement of the case ; upon which, the court interrupted him with an enquiry, whether the sufficiency of the declaration could be tried upon a motion for a new trial ? It was stated, that the question was brought up, in this form, by consent. But the court determined to hear no argument upon this point, and directed the counsel to confine themselves to the proper grounds for the motion.

The next question is, whether an officer, having made an arrest in this state, may, lawfully, pursue and retake the prisoner, in another state ? It is admitted, that the officer may pursue and retake a prisoner, wherever he can lawfully make the original arrest. He cannot, upon any established principle, proceed farther than this. In regard to the several relations existing between the officer and his prisoner, the bail and his principal, there is an obvious distinction. In the former case, the officer derives his authority from the state; and the prisoner yields to that authority, from necessity, and not by consent. The officer, therefore, in the exercise

of his legal powers, must confine himself strictly within the authority from whence those powers are derived. In the exercise of his official duty, he is a mere creature of the law, and when he transcends the limits prescribed to him, he becomes a trespasser: The moment, therefore, he is beyond the jurisdiction of the state, his official powers cease, and he becomes responsible for his acts. *Burlingham* v. *Wylee et al.* 2 *Root's Rep.* 152.

But in the case of bail and principal, a different rule is established. Here, the bail derives his authority from the consent and contract of the principal. The right of the bail to arrest the principal, is transitory, and may be exercised in any place where the principal may be found. *Pease* v. *Burt,* 3 *Day's Rep.* 485. *Nicolls* v. *Ingersoll,* 7 *Johns. Rep.* 145.

The principles here contended for, are strengthened by the law of *England.* There a master cannot send away his apprentice out of the realm. *Coventry* v. *Woodhall, Hob.* 134.

But there is still another objection to the judgment of the Superior Court. The officer was the agent of *Lucy Humphrey,* and was authorised to compromise the suit in her favour. If a doubt could be entertained on the other point, surely, none can remain upon this. The proposition made by the complainant, was acceded to by the defendant. The officer refused to receive the money, and persisted in holding the defendant in custody. The suit in favour of the complainant was in the nature of a civil suit; she could therefore, discharge the cause of action, and put a stop to the proceedings: And she having done so, in effect, the defendant could no longer hold the defendant in custody.

*W. Perkins,* contra. The first question to be considered in this case, is, whether an officer may retake a prisoner, who has forcibly escaped from him, in a foreign jurisdiction or state? It is agreed, that the officer may retake him any where in the state. The right, then, of recaption is transitory, and does not depend on statute regulations; it attends the person, let him be in whatever part of the state he may.

June, 1812.

PEARL
v.
RAWDIN.

Whatever personal rights a man may acquire under one independent government, are to be regarded under all other governments, unless they are strictly local ; such as actions given by statute to recover a penalty, &c. These constitutes a part of the criminal law of a state, which is never executed in foreign jurisdictions. In order to determine whether a person has obtained a right in a foreign state, recourse must be had to the laws of such state, as the existence of the right depends upon such laws. So, if a person makes a claim by virtue of a contract entered into in a foreign country, which is not sanctioned by those solemnities required by the laws of that country, it is clear, that no right is acquired by such contract : Yet, there is nothing in the objection, that the adoption of this principle, would allow the laws of a foreign country, to control the decisions of our courts ; for it is a principle of the common law, binding on our courts, that the extent of the right claimed, shall be justified by the law, under which the right accrued. *Holman* v. *Johnson, Cowp.* 343.

The foregoing princples of the common law, are recognised by the constitution of the *United States* : And that there might be no question upon this subject, it is expressly declared in *Art.* 1. *sec.* 10., that no state shall pass any law impairing the obligation of contracts ; and in *Art.* 4. *sec.* 2., it is provided, that " the citizen of each state, shall be entitled to all the privileges and immunities of citizens of the several states."

The prisoner is bound to submit to the execution of the laws, and not to resist the course of justice. If he does this, he is guilty of an offence, and is not only punishable by our law, but is, also, liable to pay all damages which follow his resistance. If he escapes from the officer, and is retaken, it is of no consequence where he is retaken. Surely, the offender has no right to complain, as all the trouble he meets with, is in consequence of his illegal conduct. The recaption being justified by the laws of this state, the prisoner shall not be permitted to say to the officer, although I have violated the law of this state, in effecting my escape, yet you

June, 1812.

PEARL
*v.*
RAWDIN.

have violated the laws of *New-York* in retaking me; therefore, I will pay you nothing for your trouble. This cannot be so. If a person, by his tortious act, has injured me, does he, by passing the line of an adjoining state, purge the injury? Or, if he has violated his contract, does he evade the obligation, by fleeing into a foreign jurisdiction?

Suppose, that the laws of *New-York* are violated by this recaption, is that a reason in support of this motion? That state needs not our aid in executing her laws. In the case of *Nicolls* v. *Ingersoll*, 7 *Johns. Rep.* 145. the court settled this question. The case was this; the principal fled from his bail, in this state, and was pursued and retaken in the state of *New-York*, by the bail; the court justified the recaption, although made at the expense of breaking the house of the principal. In *Howard* v. *Lyon*, 1 *Root's Rep.* 107. it was decided, that an officer may pursue and retake his prisoner, wherever he can find him, even in a foreign jurisdiction.

It is said, that bail are gaolers *pro tempore*, and may place their prisoner in close confinement, and enlarge him, at pleasure, and extend the liberties of the prison as they please, holding the principal, as it were, by a cord, which is let out and coiled, at will. They may retake the principal on the sabbath day, and have a right to his person, though in custody for a debt due the Queen. They may break and enter a house to retake him, &c. *Anon.* 2 *Show.* 214. *Sheers* v. *Brooks et al.* 2 *H. Black. Rep.* 120. *Anon.* 6 *Mod.* 231. *Parker* v. *Moore*, *Salk.* 624. Ex parte *Gibbons*, 1 *Atk.* 239.

Of such rights, and such powers, the bail is possessed: But will any one pretend, that his right and powers are superior to those of the officer? The officer has the custody of the prisoner, who, by agreement, is delivered over to the bail. This is for the benefit of the principal; for the officer may not suffer him to go at large; but the bail may do so, and yet he shall lose none of his rights. In this case, the bail has the same power, and no greater, than the officer in case of a negligent escape. There are few, or no cases of this nature, where the officer is a party; his duties are well defined, and his rights are commensurate with his duties, other-

wise, he could not discharge them. In cases of this sort, the question has almost uniformly been, not what were the rights of the officer, but whether the rights of the bail, in case of an escape of the principal, are equal to those of the officer.

But further, it is contended, that a new trial ought to be granted, because *Lucy Humphrey* gave power to the officer to effect a settlement of her claim, and authorised him to receive 80 dollars in full satisfaction thereof. Admit this to be true : what is the effect of this negotiation ? Surely, nothing. Suppose the authority of the officer to be revoked, pending the negotiation; what then would be the effect ? There was no agreement between the parties to adjust the matter in controversy. No tender of money was made by the defendant. The amount of the transaction was merely this ; the complainant made an offer, which was accepted by the defendant, but before the negotiation was concluded, the offer was withdrawn. This surely, cannot justify the escape of the defendant ; much less can it furnish a ground for a new trial.

TRUMBULL, J. When an officer holds any person a prisoner in legal custody, on arrest, and the prisoner escapes by force, or otherwise, against his will, the officer has a right to his body, and power to retake him, at any place to which he may abscond. It is a matter of no consideration, whether his original writ could have been legally served within the jurisdiction, in which he retakes him ; for he retakes him, not by that writ, but by virtue of the hold he had on him by the arrest.

By the common law, if a prisoner escape into another county, in which the sheriff has no jurisdiction, and is there retaken, the retaking is legal, and the prisoner shall have no remedy by *audita querela ;* for he shall not take advantage of his own wrong. *Boyton's* case, 3 *Co.* 43. *Ridgeway's* case, 3 *Co.* 52.

As to the second point, nothing more appears than that *Lucy*, the complainant, had impowered and directed the plaintiff, as her agent, to settle her claim, on the receipt of 80

dollars. But in complaint on the statute of Bastardy, it is not the complainant alone, who is interested. The complaint is in nature of an information *qui tam*, in favour of herself and the town, who must be liable to maintain the child, when a pauper. The officer, on a settlement of the claim of the complainant, has clearly a right to demand his fees in addition, and hold the prisoner, till they are satisfied. And it would be difficult to find any case, where a third party can have a demand against an agent, for not obeying the instructions of his principal. In every view, this objection appears of no validity.

The third objection is merely a demurrer to the declaration. Such a question cannot be brought before us on a motion for a new trial. It could only be the ground of a writ of error. Indeed, if the objection were valid, nothing would be more absurd than to advise a new trial, when the court were of opinion, that the plaintiff had no cause of action, and there was nothing, either of law or fact, to be tried.

The other Judges severally concurred in this opinion.

New trial not to be granted.